IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

JOHN W.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 2:20-cv-01821-HL

**OPINION AND ORDER**

HALLMAN, United States Magistrate Judge:

    Plaintiff John W. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Title II of the Act. 42 U.S.C. § 401

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

1 – OPINION AND ORDER

*et seq*.  For the following reasons, this case is AFFIRMED.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

# BACKGROUND

## I.  Plaintiff's Application

Plaintiff alleges disability based on his right sciatic nerve, both knees, lower back, left wrist, and arthritis in his right thumb. Tr. 222.[2] At the time of his alleged onset date, he was 46 years old. Tr. 22. He has a high school education and past relevant work experience as a sales route driver. *Id.*

Plaintiff protectively applied for DIB on January 3, 2018, alleging an onset date of December 28, 2015. Tr. 13. His application was denied initially on November 8, 2018, and on reconsideration on April 17, 2019. *Id.* Plaintiff subsequently requested a hearing, which was held on March 19, 2020, before Administrative Law Judge ("ALJ") John D. Sullivan. *Id.* Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Susan Foster, also testified. Tr. 28-55. On April 3, 2020, the ALJ issued a decision denying Plaintiff's claim. Tr. 13-23. Plaintiff requested Appeals Council review, which was denied on August 24, 2020. Tr. 1-6. Plaintiff then sought review before this Court.[3]

## II.  Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 9-1).
[3] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 19).

3 – OPINION AND ORDER

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

4 – OPINION AND ORDER

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**III.     The ALJ's Decision**

At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity after his alleged onset date of December 28, 2015. Tr. 15. Plaintiff stopped working in April 2016, and Plaintiff reported that he received special work considerations since his alleged onset date. *Id.* The ALJ indicated that although Plaintiff's employer did not confirm whether Plaintiff received special work considerations, there were several years without significant earnings since Plaintiff's alleged onset date, and other post-alleged onset date work did not produce substantial gainful activity. *Id.* Therefore, the ALJ continued with the sequential evaluation process. *Id.*

At step two, the ALJ determined that Plaintiff has the following severe impairments: "right knee degenerative joint disease; cervical and lumbar degenerative disc disease; obesity; and inflammatory arthritis." Tr. 15-17.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 17-18. The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff

> has the residual functional capacity to perform light work with lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds or less frequently. He can sit six hours of an eight-hour workday and stand or walk in combination for no more than six hours of an eight-hour workday. He can occasionally climb ramps and stairs, he should avoid ladders, ropes and scaffolding, and occasionally kneel, stoop, crouch, or crawl. Time off task can be accommodated by normal breaks.

Tr. 18.

At step four, the ALJ found that Plaintiff could not perform his past relevant work. Tr. 22.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a counter clerk, garment sorter, or small parts assembler. Tr. 23. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

## DISCUSSION

Plaintiff contends that the ALJ committed three errors. First, Plaintiff contends that the ALJ improperly rejected Plaintiff's subjective symptom testimony without offering clear and specific reasons for doing so. Pl.'s Open. Br. 9-11, ECF 14. Second, Plaintiff argues that the ALJ improperly rejected the medical opinions under the "treating physician rule." *Id.* at 6-9. Finally, Plaintiff asserts that the ALJ posed hypothetical questions to the VE that were incomplete and lacked support in the record. *Id.* at 11.

As is explained below, the Court finds that the ALJ's decision is free from reversible legal error. First, the ALJ's rejection of Plaintiff's subjective symptom testimony was supported by substantial evidence. Second, although the ALJ erred in failing to discuss the persuasiveness of two medical opinions, any error was harmless because it did not impact the ALJ's ultimate decision. Finally, the ALJ did not err in posing hypothetical questions to the VE because the hypotheticals were supported by the record. Accordingly, the Court affirms the Commissioner's decision denying Plaintiff's claim.

### I.  Subjective Symptom Testimony

   *A.   Legal Standards*

The ALJ is responsible for evaluating symptom testimony.  SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms.  *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms.  *Id.*  The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so."  *Id.*  Thus, the ALJ must specifically identify the testimony that she does not credit and must explain what evidence undermines the testimony.  *Holohan*, 246 F.3d at 1208.  General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence.  *Id.*  To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  On review, an ALJ's findings must be "properly supported by the record," and "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [symptoms]."  *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

7 – OPINION AND ORDER

*B.     Analysis*

At the ALJ hearing, Plaintiff testified that he stopped working due to pain in his legs and back. Tr. 35. He indicated that when he worked a light duty job, he could only sit for approximately 15 to 30 minutes before having to get up and move around due to pain in his lower back, knees, and ankles. Tr. 37-38. He estimated that he could stand at a workstation for about 15 to 20 minutes. Tr. 38. Further, he testified that he spends approximately 50 to 60 percent of his day laying down. Tr. 39. He indicated that he was probably unable to lift and carry two gallons of milk due to strain in his hands and pain in his lower back. Tr. 39. He testified that he has trouble with his hands that impacts his ability to write or grip things. Tr. 40. He reported that he sleeps about 3 to 4 hours per night and often naps twice a day for about 30 minutes to 1.5 hours. Tr. 42. He also testified that he felt his medications did not work. Tr. 45.

At the first step, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 19. However, in applying the second step, the ALJ concluded that Plaintiff's testimony about "the intensity, persistence, and limiting effects of his symptoms are largely inconsistent with the limited objective findings on imaging and examinations." *Id.*

Plaintiff asserts that the ALJ erred in rejecting Plaintiff's testimony because the ALJ failed to articulate specific, clear, and convincing findings in doing so. Pl.'s Open. Br. 9. Specifically, Plaintiff contends that the ALJ did not specify which testimony he found not credible and did not provide any specific evidence to show that the limitations that Plaintiff testified to do not exist. *Id*. The Court is unconvinced and instead finds that the ALJ provided sufficient reasons, based on substantial evidence, for rejecting Plaintiff's testimony.

First, there was substantial evidence in the record that Plaintiff had shown improvement in his symptoms after treatment and medication, which the ALJ was entitled to rely on to discount his subjective complaints. *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) ("An ALJ may discount a claimant's subjective complaints if the record shows effective treatment."). More broadly, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Here, Plaintiff has a variety of contemplated diagnoses concerning his pain complaints, including inflammatory arthritis as a severe impairment. Tr. 20 (citing Tr. 75, 299, 303, 314). Contrary to Plaintiff's hearing testimony, the medical records show that Plaintiff had reported on multiple occasions to several medical providers that his medications, such as Enbrel and Gabapentin, were helpful in alleviating his pain. Tr. 303-04, 447, 452, 577-79, 583-85, 637. The Court is mindful that "[r]eports of 'improvement'" must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)). But when considering the record as a whole, there was substantial evidence that Plaintiff's treatment was having some effect, and the ALJ was entitled to rely on this evidence to discount Plaintiff's subjective symptom testimony.

There was also substantial evidence that Plaintiff's allegations were inconsistent with the objective evidence in the record. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Although Plaintiff testified that he stopped working due to pain in his legs and back, the ALJ found that the objective medical evidence did not suggest the

severity of the symptoms that Plaintiff alleged. Tr. 19. In reference to the alleged knee pain, the ALJ noted that physical examinations showed effusion and swelling on a few occasions but not consistently. *Id.* Specifically, Dr. Patrick Carroll's treatment records from March 2016 showed that Plaintiff had only "mild swelling of his bilat[eral] knees and ankles." Tr. 316. An examination by Dr. Joseph McCoy in July 2016 showed that Plaintiff only had mild right knee effusion, and Plaintiff walked without a noticeable limp and displayed good range of motion of both knees. Tr. 539. In December 2016, Dr. Bruce Dreyfuss also noted only a slight effusion of the right knee and minimal tenderness. Tr. 554. Then, in March 2017, Plaintiff no longer displayed a knee effusion and only experienced mild residual stiffness. Tr. 562.

In reference to Plaintiff's back pain, the ALJ referenced multiple MRI images spanning from 2016 to 2019. An MRI from 2016 showed some degenerative changes of Plaintiff's cervical spine. Tr. 354. A March 2018 MRI of Plaintiff's lumbar spine showed broad-based disc bulges that did not require neurosurgical intervention. Tr. 390, 402. This MRI also "did not show any significant spinal stenosis or foraminal narrowing" and instead revealed only "mild spondylosis," a finding characterized as "not severe." Tr. 385, 388. An updated MRI performed in July 2019 showed no change. Tr. 568-69.

Additionally, in May 2019, Dr. Kahr concluded that Plaintiff's pain had "remained somewhat out of proportion to physical exam/radiographic findings." Tr. 20 (citing Tr. 572). The ALJ noted that Dr. Kahr found at most mild soft tissue tender points. Tr. 20 (citing Tr. 450, 456, 461, 467, 576, 582, 587). Dr. Kahr regularly noted that Plaintiff had normal gait and station and normal muscle tone. Tr. 450, 456, 461, 467, 576, 582, 588. Overall, there are multiple references to the objective medical evidence that contrasted the subjective statements made by

Plaintiff, demonstrating that the ALJ properly relied on objective medical evidence and did not arbitrarily discount Plaintiff's testimony.

## II.    Medical Opinion Evidence

### A.    Legal Standards

For claims filed on or after March 27, 2017, the revised regulations apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5867-68 (Jan. 18, 2017). Under the new regulations, the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all the medical opinions in the record and evaluate each medical opinion's persuasiveness using factors. Id. The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [he or she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [his or her] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain how he considered other factors, unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with

the record but not identical. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3). Moreover, in reviewing the ALJ's decision, the Court must consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(j); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

Even if there is some error, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (2012). An error is harmless when it is inconsequential to the ultimate non-disability decision. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Courts look to the record as a whole to determine whether an error alters the outcome of a case. *Molina*, 674 F.3d at 1115. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Stout*, 454 F.3d at 1055 (quoting *Shineski v. Sanders*, 556 U.S. 396, 409 (2009)).

    B.    Analysis

Dr. McCoy performed medical evaluations of Plaintiff for a worker's compensation claim in July and October 2016. Tr. 512-547. In the July 2016 evaluation, Dr. McCoy reported that Plaintiff "maint[ed] good range of motion of both knees and ankles," that an "inspection of [Plaintiff's] bilateral ankles demonstrate[d] no obvious instability," and that Plaintiff "has some limitation of lumbar spine flexibility with increased pain with forward bending and extension." Tr. 539. Dr. McCoy observed that "there appears to be an obvious rather substantial inflammatory reaction in [Plaintiff's] right knee. . . ." Tr. 540. Dr. McCoy anticipated that it

was reasonable to expect "some ongoing intolerance for prolonged standing, walking, climbing, and jumping in and out of the delivery vehicle," so Plaintiff should be provided an accommodation to perform a less strenuous job.  *Id.*  In his October 2016 evaluation, Dr. McCoy reiterated his opinion that Plaintiff should be permitted to perform a less strenuous job.  Tr. 546.

In December 2016, Dr. Dreyfuss also performed an evaluation of Plaintiff for his worker's compensation claim.  Tr. 548.  Dr. Dreyfuss noted on physical examination that there was "a bulge indicating a small effusion of the right knee," and that there was "slight swelling, slight tenderness, and slight warmth of the bilateral ankles."  Tr. 554.  Dr. Dreyfuss opined that Plaintiff was "experiencing a temporary partial disability referable to the inflammatory spondyloarthropathy," and Dr. Dreyfuss noted that Plaintiff's "[p]rincipal limitations are in the use of [his] lower extremities especially as it would involve prolonged walking, crawling, stooping, lifting, or carrying."  Tr. 556.  Overall, Dr. Dreyfuss indicated that "less physically demanding jobs are certainly within [Plaintiff's] capacity, especially those jobs [that] could be more administrative or involve less use of lower extremities."  *Id.*

The ALJ did not expressly mention or discuss either Dr. McCoy's or Dr. Dreyfuss's medical opinions.  Instead, the ALJ determined that

> [t]he statements and opinions relating to a workers' compensation claim focus on an on the job injury/injuries, not the totality of the claimant's impairments. The standards and ultimate question of causality under workers' compensation litigation is very different from the question of the claimant's residual functional capacity as must be determined here. Consistent with this, findings during actual examinations are much more relevant than any review of records or discussion of apportionment of limitations. Pertinent findings are reflected above.

Tr. 20.

Plaintiff asserts that the ALJ erred in rejecting the medical opinions of his treating physicians: Dr. McCoy and Dr. Dreyfuss.  Pl.'s Open. Br. 6-7.  Plaintiff argues that although the

13 – OPINION AND ORDER

revised agency regulations apply to Plaintiff's claim, the ALJ failed to give proper weight to the treating physicians' medical opinion evidence, as is required by Ninth Circuit precedent. Pl.'s Open. Br. 6-7. The Court is unpersuaded. Plaintiff filed his application in January 2018, Tr. 176, so the revised regulations apply to his claim. Contrary to Plaintiff's assertion, the new rules eliminate any hierarchical ranking of medical opinions and do not assign deference to any medical opinions from treating sources. 20 C.F.R. § 404.1520c(a) (2017). Thus, in this case, the ALJ properly applied the new regulations in evaluating the medical opinions and was not required to give more weight to treating physicians' medical opinions.

Although the ALJ was not required to assign hierarchical deference to certain medical opinions under the new regulations, the Commissioner concedes that the ALJ erred in not evaluating whether the medical opinions were persuasive. Def.'s Br. 7. "The new regulations still require the ALJ to explain her reasoning for discounting a medical opinion from a treating or examining physician to allow for meaningful judicial review." *Robert S. v. Saul*, 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 3:19-CV-01773-SB, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). The Commissioner argues, however, that any error was harmless. Def.'s Br. 7. The Court agrees that any error is harmless because Plaintiff's RFC was consistent with the medical opinions.

Here, although the ALJ erred in failing to explain how Dr. McCoy and Dr. Dreyfuss's medical opinions were unpersuasive, any error is harmless because those medical opinions do not outline any functional limitations that contradict the ALJ's ultimate conclusion. "An ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them." *Mendoza v. Kijakazi*, 1:19-CV-1371-HBK, 2022 WL 715096, at *4 (E.D. Cal. Mar. 10,

2022) (citing *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). First, the ALJ's computation of Plaintiff's RFC is consistent with both medical opinions. The ALJ determined that Plaintiff had an RFC to perform "light work" with multiple physical exertional limitations, including limitations on Plaintiff's ability to lift, carry, push, pull, stand, walk, climb, and jump. Tr. 18. While both Dr. McCoy and Dr. Dreyfuss opined that Plaintiff has some physical limitations, *compare* Tr. 543, 556, their noted limitations are appropriately reflected and incorporated in Plaintiff's RFC, *with* Tr. 20.

Second, the ALJ's step five finding also did not contradict either medical opinion. Neither Dr. McCoy nor Dr. Dreyfuss completely ruled out Plaintiff's ability to return to work; rather, Dr. McCoy and Dr. Dreyfuss both highlighted Plaintiff's capability of returning to work in a less strenuous position. *See* Tr. 540, 556. In performing step five of the sequential disability determination, the ALJ concluded that Plaintiff could perform jobs with an unskilled light occupational base that was within Plaintiff's RFC, including work as a counter clerk, garment sorter, and small parts assembler. Tr. 23. Thus, because the limitations outlined in the medical opinions do not contradict the ALJ's ultimate conclusion—including Plaintiff's RFC and ability to perform other jobs in the national economy based on that RFC—the ALJ's failure to evaluate the persuasiveness of Dr. McCoy's and Dr. Dreyfuss's medical opinions was harmless error.

### III.   ALJ's VE Hypothetical

The RFC is the most a person can do despite his physical or mental impairments. *See* 20 C.F.R. § 404.1545. "The ALJ assesses a claimant's RFC based on all the relevant evidence in [the] case record." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quotations and citation omitted). In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and

other evidence," including the claimant's testimony. 20 C.F.R. § 404.1545; *see also* Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC). "Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE." *Kimberley A. v. Kijakazi*, No. 2:20-CV-01802-SB, 2022 WL 19203, at *5 (D. Or. Jan. 3, 2022) (citations omitted).

At the ALJ hearing, the ALJ asked the VE several hypothetical questions involving an individual with the same age, education, work experience, and RFC as Plaintiff. Tr. 49-51. The VE responded that, within the hypothetical framework that the ALJ imposed, someone with those characteristics would be unable to perform Plaintiff's past relevant work but could perform three jobs in the light work range in the national economy. Tr. 50-51.

Plaintiff cites to *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988), for the proposition that the ALJ failed to pose hypothetical questions to the VE that encompassed all Plaintiff's limitations because the ALJ (1) improperly discredited Plaintiff's subjective symptom testimony, and (2) ignored relevant medical opinion evidence. Pl.'s Open. Br. 11. In *Embrey*, the Ninth Circuit held that if an ALJ's hypothetical to a VE is unsupported by the record and does not reflect all a plaintiff's limitations, then the VE's opinion has no evidentiary value and cannot support the ALJ's decision. *Id.* at 423. That is not the case here.

In this case, the ALJ's hypothetical questions to the VE were both supported by the record and reflected all Plaintiff's limitations. As was recounted above, the ALJ's reasons for

discrediting Plaintiff's subjective symptom testimony did not constitute legal error and was supported by substantial evidence. Additionally, the ALJ's error in discounting Dr. McCoy's and Dr. Dreyfuss's medical opinions was harmless and did not impact the ALJ's ultimate conclusion.

Further, although Plaintiff argues that the record does not contain any statement "from any doctor who actually examined Plaintiff to indicate that Plaintiff can perform the [six] hours of standing and walking," Pl.'s. Op. Br. 8, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). A plaintiff's RFC is not a medical issue dependent on a physician's opinion, but rather, an administrative finding based on evidence in the entire record. 20 C.F.R. § 404.1546(c); SSR 96-5p, available at 1996 WL 374183, at *5. In computing a plaintiff's RFC, the ALJ can utilize a wide range of evidence available in the record, including reports of daily activities, lay evidence, medical source statements, the effects of treatment, recorded observations, and other evidence. SSR 96-8p, available at 1996 WL 374184, at *5.

Therefore, Plaintiff's contention is, more narrowly, whether—based on the entire record—the ALJ adequately accounted for Plaintiff's limitations in the RFC. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Here, as noted above, the ALJ referenced treatment records, Plaintiff's improvement with treatment, and statements from Plaintiff's doctors that he was capable of light work in determining Plaintiff's RFC. Tr. 19-20. Ultimately, the ALJ had sufficient evidence to determine Plaintiff's limitations and ability to perform light work.

In sum, the ALJ's representation to the vocational expert fully and accurately encompassed all Plaintiff's limitations, and the vocational expert's testimony regarding which occupations Plaintiff can perform has evidentiary value.

17 – OPINION AND ORDER

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 30th day of March, 2022.

_____
ANDREW HALLMAN
United States Magistrate Judge